HOLT *v*. BOARD OF SUPERVISORS OF OGEMAW COUNTY.

CONSTITUTIONAL LAW—ELECTIONS—INTOXICATING LIQUORS.

An election to determine whether the county of Ogemaw should adopt prohibition was not void because only one polling place was provided in the city of West Branch as authorized by Act No. 371, Local Acts 1905, although it is provided by the Constitution, Art. 3, § 1, that a polling place shall be set up in each ward of a city. The result of the election was not rendered invalid if the matter voted upon was sufficiently announced to the electors, and a place provided for voting, lawful ballots furnished and the electors permitted to vote, all that desired to do so exercising their franchise. McALVAY, J., dissenting.

Certiorari to Bay; Collins, J.   Submitted March 18, 1915.   (Calendar No. 26,463.)    Decided June 7, 1915.

Mandamus by James Holt and another against the board of supervisors of Ogemaw county.   An order denying the writ is reviewed by relators on certiorari. Affirmed.

*Edwin Rawden* (*William T. Yeo,* of counsel), for relators.

*George Bennett,* Prosecuting Attorney (*Harris & Chapin,* of counsel), for respondent board of supervisors of Ogemaw county.

OSTRANDER, J.   It is one thing to determine in advance of an election that an illegal provision for the method of holding it shall  not be enforced, as was done in *Attorney General* v. *Board of Councilmen of Detroit,* 58 Mich. 213 (24 N. W. 887, 55 Am. Rep. 675), and quite another thing to determine that the

186 Mich.—16.

actual result of an election which has been held shall not be conclusive. No citizen is here claiming that he was deprived of the right to vote. It does not appear that any one was misled, or refrained from voting, or voted illegally, because of the manner of holding the election. The subject to be voted upon was published to the electors, a place for voting was furnished, ballots were prepared, and the actual result was honestly declared.

Conceding that the legislative direction for holding elections in the city of West Branch is not in harmony with the Constitution, and conceding, further, the general rule to be that an unconstitutional law is no law and cannot be made the justification, in law, for any action or nonaction, the invalid law is not here used to justify, but is sought to be used to defeat, the action of electors.

The right of the electors affected to vote at the time the vote was taken, upon the matters actually voted upon, does not come from the invalid provisions of the statute. The complaint is that, following the invalid direction, the right was exercised in an improper voting place, in charge of persons having an apparent, but not a real, right to receive and count the votes. By applying a rule intended to preserve the rights of the electors, it is proposed to defeat the will of the electors, with the expression of which the operation of the invalid law is not shown to have in any way interfered. It is a serious undertaking, and the principle involved is not changed by the nature of the matter voted upon.

The same rule should be applied as in cases where it is sought to disfranchise voters on account of the action, or omission, of officers in following, or failing to follow, the rules governing elections. *Adsit* v. *Secretary of State,* 84 Mich. 420 (48 N. W. 31, 11 L. R. A. 534) ; *People* v. *Avery,* 102 Mich. 572 (61 N. W.

4) ; *Bragdon* v. *Navarre*, 102 Mich. 259 (60 N. W. 277), and cases cited in the opinions.

Usually, the writ of mandamus will not be granted where justice does not require it. I think the court below was right, and its action should be affirmed.

BROOKE, C. J., and KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred with OSTRANDER, J.

MCALVAY, J. (*dissenting*). A writ of certiorari was issued in these proceedings to review an order made by the circuit court of Bay county denying a writ of mandamus in this cause, which had been transferred to that court from Ogemaw county. There is no disagreement as to the facts out of which these proceedings arose.

The city of West Branch, in Ogemaw county, which was formerly the village of West Branch, was incorporated as a city of the fourth class by Act No. 371, Local Acts 1905 of this State, entitled:

"An act to incorporate the city of West Branch in the county of Ogemaw as a city of the fourth class, and to repeal all acts or parts of acts relative to the incorporation of the village of West Branch."

This act was given immediate effect and approved March 9, 1905. The act is a brief one, containing but 13 sections. Only the provisions involved in these proceedings require to be stated. Section 1 describes the territory affected, as follows:

"The territory in the county of Ogemaw and State of Michigan, described as follows, to wit: the south one-half of section 19 and the north one-half of section 30, all in township 22 north, range 2 east, is hereby detached from the township of West Branch and the said territory so detached is hereby incorporated as the city of West Branch."

Section 2 divides the city into three wards, giving the boundaries of each ward.

"Sec. 3. The said city of West Branch shall in all things not herein otherwise provided for, be governed, and its powers and duties defined and limited by an act, entitled, 'An act to provide for the incorporation of cities of the fourth class,' being act number two hundred fifteen of the public acts of eighteen hundred ninety-five, approved May twenty-seventh, eighteen hundred ninety-five, and all acts amendatory thereto, except so far as the same may be inconsistent with this act."

Section 4 refers to the school district of the township of West Branch, of which the territory detached was a part, and to levying taxes for school purposes.

Section 5 makes a single assessment district of the city of West Branch and provides for the assessment and spreading of taxes therein by the city assessor, such assessor to be elected annually with powers and duties as provided by the act referred to in section 3, *supra*, entitled "An act to provide for the incorporation of cities of the fourth class."

Section 6 excepts this city from creating a board of public works, as provided in the act governing fourth class cities.

Section 7 creates a board of review.

"Sec. 8. The city hall shall be the voting place of all the electors of the various wards, and the electors of each ward shall be furnished with a booth, or booths, plainly labeled on the outside with the number of the ward where they have their residence, and each elector shall mark his ballot in the booth numbered in correspondence with the number of his ward, and the inspectors of election shall deposit the ballots so marked in ballot boxes provided for each separate ward.

"Sec. 9. The board of registration for the entire city of West Branch shall consist of the clerk of said city and two electors thereof, to be appointed by the mayor, by and with the consent of the council, who shall perform all the duties of the several boards of registration provided for in said act number two hundred fifteen.

"SEC. 10. Inspectors of election for the city as a whole shall consist of the city assessor and the alderman from each ward whose term of office expires last."

The other sections do not require attention, except to say that, in conformity with the entitling of the act, the last section repealed all acts or parts of acts relative to the incorporation of the village of West Branch.

The sections of the said act of 1905 specially involved in these proceedings are sections 8, 9, and 10, quoted *supra*, relative to the place and manner of voting in said city, the board of registration of voters for the entire city, and the board of inspectors of election for the city as a whole. These provisions apply to all elections of State, county, district, and city officers, and all special elections for every purpose for which elections may be held.

In March, 1908, the record shows that the common council of the city, having been advised that sections 8, 9, and 10 were unconstitutional and inconsistent with the provisions of the general law in relation to cities of the fourth class, by a resolution determined to proceed at the following April election pursuant to such general law. This was done, and thereafter all elections in said city were so held until October 10, 1912, when by resolution the common council instructed the city clerk to notify the electors:

"That the board of registration and election will hereafter be held only at one polling place in said city, which place is hereby designated the city hall."

The questions involved in these proceedings arise out of an election held April 6, 1914, in the county of Ogemaw, when, under what is known as the "Local Option Law," the question, "Shall the manufacture of liquors and the liquor traffic be prohibited within the county?" was submitted to the electors of

Ogemaw county. At the meeting of the board of supervisors of said county as required by law the following week to canvass votes upon said question, a petition was filed with them protesting against the canvass of votes cast in the city of West Branch for the reason that no legal election had been held in said city: *First*, that no election was held in the first and second wards in said city and no booths or election boards in said wards; *second*, that the only place where electors cast their votes in said city was at the city hall, located in the second ward of said city, where the electors of the first and third wards cast their ballots and voted outside the limits of the respective wards in which they resided, where the electors of the second ward also voted, at which place an election was conducted by a board of inspectors of election representing the city as a whole; *third*, that no legal and valid election was held at any place in said city, for the reason that this election was conducted by a board of inspectors of election acting for the city as a whole, which board was constituted of members from all the wards, and also that there were no boards of registration provided for each of said wards in said city of West Branch.

This meeting of the board of supervisors pursuant to statute as a board of canvassers was held April 13, 1914, at which meeting a special committee of five supervisors was duly appointed "to canvass the local option vote of Ogemaw county for the year 1914, and report the result of their findings to this board." Thereupon said board took a recess until April 14, 1914, at 9 o'clock a. m., which committee on the following day reported to the board the result of its findings.

"We find that in the townships and wards outside of the city of West Branch there was voted upon said question as follows: (Giving the detailed vote in all

of said townships and wards, specifically naming them.)

"We find the total votes cast in the several townships and wards above specifically named on said question, 'Yes,' 818 votes, and 'No,' 803 votes.

"We further find that in the city of West Branch at the election held at the city hall in said city as certified by the inspectors of said election there was voted upon said question as follows:" (Giving the detailed vote in all of said wards.)

The report then states:

"We find the total votes cast in said city of West Branch on the said question, Yes, 98 votes, and No, 183 votes."

The committee further reported:

"We further find that the election held in said city of West Branch for the several wards in said city was held in the city hall located in the second ward of said city.

"We further find that the inspectors of election of said election held in said city at the city hall was composed of Curtis J. Winslow, an elector of the second ward, James B. Ross, an elector of the first ward, Samuel D. Shaffner, an elector of the second ward, and Aberdeen McGregor, an elector of the third ward, as is shown by the poll list and certificates of election examined by us. ·

"We further certify that we are unable to determine further the result of such canvass by reason of the legal questions involved, and we herewith submit with this our report a true copy of the protest herein referred to. All of which is respectfully submitted."

This report was accepted and adopted by the board upon a yea and nay vote, 14 to 4, following which a resolution was presented and adopted which stated the material facts contained in the report and concluded as follows:

"Therefore, be it resolved, that we are unable to determine the result of said election satisfactory to ourselves without a determination of the legal ques-

tions involved in said protest, the constitutionality of the law under which said city assumed to hold elections at said city hall and the right of the central board of inspectors therein to conduct such election as held in said city on April 6, 1914, upon said question, and, therefore, we decline to make final decision at this time."

This concluded the business of the board of supervisors convened as a board of canvassers, and upon motion the board then adjourned *sine die.*

Thereafter proceedings were begun in the circuit court for Ogemaw county by filing a petition therein praying for an order to show cause why a peremptory mandamus should not issue against the board of supervisors of said county compelling it to reconvene as a board of canvassers and proceed to canvass the vote had on the question, "Shall the manufacture of liquors and the liquor traffic be prohibited within the county?" at the election held in said county April 6, 1914, from the statements of the election inspectors of all the townships and wards therein outside the city of West Branch, and to determine and declare the result of said election from the votes cast in said county outside of the city of West Branch, and then to adopt a resolution of prohibition and take other steps necessary under the law. The circuit judge of said court being disqualified, application was made to the judge of the circuit court for the county of Bay, who issued the order to show cause and, after the answer of respondent board was duly filed, the matter was heard before the circuit court for the county of Bay and a writ of mandamus was denied. Later, this court issued the writ of certiorari in these proceedings to review such order.

In an opinion filed in the mandamus proceedings, it appears that the writ of mandamus was denied for the reason that holding this election for all three wards at the city hall in the second ward of the city

of West Branch, under the conditions stated, was a mere irregularity and did not invalidate the election held in said city. Relators contend that said court was in error in so holding, and insist that no lawful election was held in any of the wards of the city of West Branch on April 6, 1914. This is based upon the contention that the provisions of sections 8, 9, and 10, of Act No. 371, Local Acts 1905, under which the city of West Branch was incorporated, providing but one board of registration of electors in said city and for holding the election for the three wards of said city at the city hall in the second ward, to be conducted by a board of election inspectors for the city as a whole, consisting of members residing in each of the three wards, were unconstitutional and void.

Article 3 of the State Constitution relates to the elective franchise. Section 1 of that article, after designating who shall be an elector and entitled to vote, reads as follows:

"But no one shall be an elector or entitled to vote at any election unless he shall be above the age of twenty-one years, and has resided in this State six months and in the township or ward in which he offers to vote twenty days next preceding such election."

This constitutional provision, which is the same as that of the Constitution of 1850, was before this court for construction at an early date, and the decisions relative thereto are familiar to the profession. One of the earliest was the case of *People* v. *Blodgett*, 13 Mich. 127, which involved the constitutionality of the soldiers' voting law, in which every member of the court wrote an opinion. Mr. Justice CAMPBELL, who agreed with the majority of the court, in the opinion written by him, said:

"That the township is the necessary place for the vital purposes of the law is manifest, for no offer to

vote in any other township but that of the voter's residence is permitted by the Constitution."

And, further:

"I cannot therefore attach to it any other meaning than that the voter must cast his vote personally, in his own township or ward. And I am, therefore, compelled to declare that in my opinion the act of the legislature authorizing voting on a different basis is invalid." *People* v. *Blodgett*, at pages 144 to 149 of 13 Mich.

Later, in the case of *Attorney General* v. *Board of Councilmen of City of Detroit*, 58 Mich. 213 (24 N. W. 887, 55 Am. Rep. 675), the court, recognizing the constitutional amendment which had been made relative to soldiers voting, said:

"All male citizens of lawful age, and some whose United States citizenship is incomplete, are entitled after a certain term of residence to vote in the township, or ward, in which they reside. Every vote, for any purpose whatever, is required to be cast in such township or ward. The only exception is in case of soldiers in the field during war."

It would seem unnecessary to discuss the proposition that a statute, which provides that an elector (not within the constitutional exemption) may vote in any township or ward other than that in which he resides, would be constitutional. It follows that the provisions of section 8 of this statute, which provides that the electors of the first and third wards shall vote in the second ward of the city of West Branch, is unconstitutional and void, and no election was held on April 6, 1914, in the said first and third wards, and therefore the board of supervisors as a board of canvassers had no lawful returns before it of any election held in said wards. This was not a mere matter of irregularity. The votes cast in the second ward of said city returned as from the first and third wards were absolutely void and could not

be counted and considered in determining the result of said election. The only election in said city was held in the city hall in the second ward, where all electors from all the wards were permitted to vote, and was conducted under the authority of section 10 of Act No. 371, which provides as follows:

"Inspectors of election for the city as a whole shall consist of a city assessor and the alderman from each ward whose term of office expires last."

It is contended that this provision is unconstitutional because it destroys the right of local self-government. It is not disputed but that section 10 deprives the electors of the several wards in said city of the control of their own elections and imposes a substantial and serious difference upon the electors thereof in the exercise of the elective franchise from that imposed upon the electors in the other townships and wards in the county of Ogemaw, in fact, in the entire State of Michigan.

In the case of *Attorney General* v. *Councilmen of Detroit*, cited *supra*, where a statute was construed which provided for the appointment of election inspectors in Detroit by a certain board appointed by the mayor and council, this court held that it was an interference with the municipal right of local self-government, in which Mr. Justice CAMPBELL, speaking for the court, after stating, as already quoted from this opinion, *supra*, said:

"All legislation imposing restraints or conditions upon voting must conform to the other clauses and provisions of the Constitution. No part of that instrument can be allowed to override or destroy any other part. It is also well settled that our State polity recognizes and perpetuates local government through various classes of municipal bodies whose essential character must be respected, as fixed by usage and recognition when the Constitution was adopted. And any legislation, for any purpose, which disregards any of the fundamental and essential requisites of

such bodies, has always been regarded as invalid and unconstitutional. There is nothing in the Constitution which permits the legislature, under the desire to purify elections, to impose any conditions which will destroy or seriously impede the enjoyment of the elective franchise. And, as the right of voting is the same everywhere, it is obvious that the conditions regulating the manner of exercising it must be the same in substance everywhere. The machinery of government differs in its details in cities, villages, and townships, and, of course, it is unavoidable that there must be some differences in methods and officers, to administer the election laws. But it cannot be lawful to create substantial or serious differences in the fundamental rights of citizens in different localities, in the exercise of their voting franchises."

By the general election laws of this State the electors of each political subdivision, township, ward, or district, is entitled to elect its board of election inspectors from among the electors residing within such subdivision, and also to a board of registration of electors consisting of certain officers of such township, ward, or district to register all qualified electors. The statute under consideration deprives the electors of all the wards in the city of West Branch of the exercise of such rights and privileges, and is therefore unconstitutional and void.

It is the right of every qualified elector to vote in the township or ward where he resides, and in no other place, and to have his vote received and counted and his qualifications passed upon by inspectors of election of that particular township, ward, or precinct.

If the contentions of respondents could be sustained, it follows logically that the legislature may enact statutes providing one place in each county in which the electors from all the townships and wards therein must vote. The statement of the proposition is its own refutation.

. It is hardly necessary to say, from what has already been stated, that no lawful election was held in the second ward of the city of West Branch.

Our conclusion is that the trial court was in error in denying the writ of mandamus to relators. The order and judgment of the circuit court should be reversed.