KALAMAZOO TOWNSHIP *v.* KALAMAZOO COUNTY CLERK.

1. MUNICIPAL CORPORATIONS—ANNEXATION TO HOME-RULE CITY—PE-
   TITION—STATUTES.

   Petition for annexation of township territory to home-rule city after action thereon by the board of supervisors is not held insufficient because of insufficient verification, because there was not a proper description of the area represented following each signature nor because of failure to show that each signer inspected the map attached to the petition before signing it, where verification was corrected before action taken on the petition, the petition contained a sworn statement by a registered surveyor as to area involved, an undisputed statement that the signers held record title to more than 1/2 of such area and a further statement that each signer had inspected the map (CL 1948, §§ 117.6, 117.8, 117.9, as amended by PA 1951, No 58).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 6, 7, 18–22] 37 Am Jur, Municipal Corporations §§ 23–34.
[4] 50 Am Jur, Statutes §§ 386, 387.
[8, 12, 14–17] 14 Am Jur, Counties § 32.
[9, 13] 50 Am Jur, Statutes § 238.

2. SAME—ANNEXATION—SIGNATURE OF OFFICERS OF CORPORATION—EVIDENCE OF AUTHORITY.

> The statute pertaining to annexation of territory to a home-rule city does not require that petition for annexation signed on behalf of a corporation include proof of the officer's authority, hence, in the absence of evidence to the contrary the presumption prevails that the officer signing had authority to do so (CL 1948, § 117.6).

3. SAME—ANNEXATION—ELECTION—IRREGULARITIES.

> The determination as to whether or not election on question of annexation of township territory to a home-rule city is valid is based principally on whether any elector has been misled or hindered in his voting by reason of irregularities (CL 1948, §§ 117.6, 117.8, 117.9, as amended by PA 1951, No 58).

4. ELECTIONS—CONSTRUCTION OF STATUTES.

> Election statutes are to be tested like other statutes, but with a leaning to liberality in view of the great public purposes which they accomplish.

5. SAME—STATUTES—SUBSTANTIAL COMPLIANCE WITH PRELIMINARY STEPS.

> Substantial compliance with the statutory preliminary steps to the holding of an election is often held sufficient after a question has been submitted to and approved by the electors.

6. MUNICIPAL CORPORATIONS—ANNEXATION—CONSTRUCTION OF STATUTES—SIGNATURES ON PETITIONS.

> Statute relating to petitions for annexation of township territory to home-rule cities requiring that such petitions be signed by qualified electors who are freeholders residing within the cities, villages or townships to be affected thereby is construed as calling for signature of electors in both the township and the city (CL 1948, § 117.6).

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—VALIDITY OF PETITION FOR ANNEXATION TO HOME-RULE CITY—SIGNATURES.

> Question as to validity of petition for annexation of territory to home-rule city arising from fact that there were no signers of the petition who were electors and freeholders in the city was not entitled to consideration on appeal, where such omission had not been called to the attention of the board of supervisors or the trial court either in the pleadings or on the hearing and was not raised as an objection as ground for appeal in the assignment of errors (CL 1948, § 117.6).

8. COUNTIES—BOARD OF SUPERVISORS—SPECIAL MEETINGS—NOTICE—STATUTES.

A meeting of a county board of supervisors which had not been called pursuant to provisions of statute prescribing manner of giving notice of a special meeting may not be considered as such a meeting (CL 1948, § 46.10).

9. STATUTES—CONSTRUCTION—COMMON USAGE.

All words and phrases shall be construed and understood according to the common and approved usage of the language in construing statutes (CL 1948, § 8.3).

10. SAME—REGULAR.

The word "regular" as applied in construction of statutes, indicates something constituted, selected, conducted or made in conformity with established or prescribed usages, rules, or discipline; duly authorized or constituted; properly qualified or educated.

11. SAME—SPECIAL.

The word "special" as applied in construction of statutes means distinction by some unusual quality, uncommon, noteworthy, or extraordinary.

12. COUNTIES—BOARDS OF SUPERVISORS—MEETINGS.

The statutory enumeration of certain meetings that the board of supervisors must have was used to provide a minimum, rather than a maximum, number, in view of the diversity of needs of large and small counties (CL 1948, § 46.1).

13. STATUTES—CONSTRUCTION.

The rules of common sense apply to the construction of statutes.

14. COUNTIES—BOARD OF SUPERVISORS—MONTHLY MEETINGS—SPECIAL MEETINGS.

Monthly meetings of the county board of supervisors which are held pursuant to a duly-adopted rule of the board are not special meetings as to which notice must be given pursuant to statutory requirement (CL 1948, §§ 46.1, 46.10).

15. SAME—BOARD OF SUPERVISORS—ADJOURNED MEETING—CALL OF CHAIRMAN.

A meeting of the county board of supervisors which was held pursuant to the call of the chairman of the board on motion duly adopted at a regular monthly meeting, which adjourned meeting was not a secret meeting, was a legally held meeting, since the statute authorized the board to adjourn from time to time as they deemed necessary without requiring that the adjournment be to a fixed date (CL 1948, § 46.1).

16. SAME—BOARD OF SUPERVISORS—ADJOURNED MEETING—CALL OF CHAIRMAN.

A county board of supervisors may place the responsibility on its chairman to issue a call for an adjourned meeting, and in the absence of proof of an abuse of his power, the meeting so called should be considered as a legally adjourned meeting (CL 1948, § 46.1).

17. SAME—BOARD OF SUPERVISORS—MEETINGS—ANNEXATION.

The county board of supervisors had the right to pass resolution annexing township territory to a home-rule city, where passed at a meeting of the board of supervisors held pursuant to the call of the chairman in whom responsibility for calling the meeting had been placed at a regular monthly meeting of the board (CL 1948, § 46.1).

18. MUNICIPAL CORPORATIONS — ANNEXATION — JURISDICTION — COUNTIES.

The filing of a petition for annexation of territory in which no electors resided to home-rule city with township board and city clerk on May 8th did not vest the township and city with exclusive jurisdiction in the premises, where such filing constituted an alternate method, hence, where township board delayed over 2 months without taking action thereon, petitioners were justified in filing the petition with the county clerk on August 14th (CL 1948, § 117.9, as amended by PA 1951, No 58).

19. SAME—ANNEXATION—ELECTION—RATIO OF ELECTORS IN CITY AND TOWNSHIP.

Election as to annexation of township territory to home-rule city was not invalid by reason of the fact that electors in the city outnumbered electors in the township by a ratio of more than 2 to 1 (CL 1948, §§ 117.6, 117.8, 117.9, as amended by PA 1951, No 58).

20. QUO WARRANTO—INJUNCTION—TRANSFER OF CAUSES.

Review of annexation election on the merits is had where plaintiffs sought to enjoin annexation of township territory to home-rule city, but if court decided injunction was not the proper remedy the suit should not be dismissed but transferred to law side and disposition had as a quo warranto proceeding.

21. MUNICIPAL CORPORATIONS—ANNEXATION—STATUTES—PETITIONS.

Annexation of township territory, approved on election *held*, to have been legally submitted to the electorate, irrespective of statutory provision that after adoption of resolution by board

of supervisors neither the sufficiency nor legality of the petition for annexation might be questioned in any proceeding (CL 1948, § 117.8).

22. COSTS—PUBLIC QUESTION—ANNEXATION OF TOWNSHIP TERRITORY TO HOME-RULE CITY.

No costs are allowed in proceeding to review validity of election as to annexation of township territory to home-rule city, a public question being involved (CL 1948, §§ 117.6, 117.8, 117.9, as amended by PA 1951, No 58).

CARR, SHARPE, and DETHMERS, JJ., dissenting.

Appeal from Kalamazoo; Simpson (John), J., presiding. Submitted January 6, 1954. (Docket No. 12, Calendar No. 45,947.) Decided June 7, 1954.

Bill by Township of Kalamazoo, a municipal corporation, School District No. 6 Fractional, a municipal corporation, The Milwood Property Owners Association, a corporation, Robert B. Boyce and Orson W. Peck, against Anthony Stamm, as clerk of Kalamazoo county, Marie Filarski, as clerk of the city of Kalamazoo, Joseph A. Parisi, Jr., as clerk of the township of Kalamazoo, Board of Supervisors of Kalamazoo county, City of Kalamazoo, a municipal corporation, and County of Kalamazoo, a municipal corporation, to prevent annexation of certain township territory to city. Following hearing, case ordered transferred to law side for treatment as a proceeding in quo warranto. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Smith & Bauckham* (*John H. Bauckham,* of counsel), for plaintiff Township of Kalamazoo.

*Sharpe, Stapleton, Huff & Adams* (*Herbert J. Stapleton,* of counsel), for plaintiffs School District No. 6 Fractional and Boyce.

*Troff, McKessy, Lilly, Uridge & Bonow* (*Gerald McKessy,* of counsel), for plaintiffs Milwood Property Owners Association and Peck.

*Richard H. Paulson,* City Attorney, for defendants City of Kalamazoo and Marie Filarski, clerk of the City of Kalamazoo.

KELLY, J. Appellants seek reversal of a judgment of the circuit court of Kalamazoo county, upholding the annexation of a part of the township of Kalamazoo to the city of Kalamazoo. Appellants assign 14 errors as grounds for appeal. Two of these deal with the court's refusal to grant a temporary injunction and the court's holding that the annexation was legal; 8 refer to the contents of the petition for annexation, and the manner of filing same. The remaining 4 present the following questions:

Was the resolution calling an annexation election passed at a regular, valid and legal meeting of the board of supervisors?

Did the court err in transferring the cause from the equity to the law side of the court?

Was the board of supervisors' decision that the petition was sufficient subject to judicial review?

Was the act* under which annexation was accomplished unconstitutional?

The petition requesting the election was filed August 14, 1952. The resolution calling for the election was passed by the Kalamazoo county board of supervisors on September 18, 1952. Plaintiffs filed their bill of complaint September 26, 1952, requesting an injunction. Injunctive relief was denied October 2, 1952.

On November 4, 1952, over 36,000 electors of the township and city voted on the annexation proposal and a majority voted "yes." The annexation became effective January 3, 1953.

Two weeks after the election, plaintiffs filed their supplemental bill of complaint, reaffirming the con-

---

* PA 1909, No 279, § 9 (CL 1948, § 117.9), as amended by PA 1951, No 58 (CLS 1952, § 117.9 [Stat Ann 1953 Cum Supp § 5.2088]).

tents of the original bill and setting forth that the election had been held. On December 8, 1952, plaintiffs again amended their bill of complaint, alleging that as a result of the election the township would lose a substantial part of its valuation both for special assessments and for future general tax purposes, and would be required to turn over and transfer to the city of Kalamazoo a substantial portion of the personal property of said township. The opinion of the trial court was filed May 14, 1953.

That portion of the township which was annexed, exclusive of streets, consisted of 278.86 acres. It was a part of the township which had been commercially developed and no electors resided in the area. The assessed valuation of both real and personal property of the township of Kalamazoo for 1952 was $43,-260,755. That portion of the assessed valuation attributable to the area annexed was $3,641,600, or approximately 8.4% of the total assessed valuation.

None of the appellants or property owners within the area detached from the township and annexed to the city complained of the action of the board in calling for the election, or of the manner in which the election was conducted. In fact, this record is devoid of any inference that the question was not properly presented on the ballot, or that any fraud was practiced in giving proper notice of the pending election, or in conducting same.

Sections 6 and 8 of PA 1909, No 279 (home-rule act),* apply to annexation petition requirements and the board of supervisors' approval or disapproval of same. No qualified signers resided in the territory proposed to be annexed and, therefore, the petition was governed by the provisions of section 6 providing that a petition would be adequately signed if it

---

* CL 1948, §§ 117.6, 117.8 (Stat Ann 1949 Rev §§ 5.2085, 5.2087).— REPORTER.

contained the signatures "of persons, firms, [or] corporations \* \* \* who collectively hold record legal title to more than 1/2 of the area of the land exclusive of streets, in the territory to be annexed." The petition was signed by 8 corporations and 1 individual, and contained the following statement, which was not challenged or disputed:

"That the undersigned persons, firms and corporations collectively hold record legal title to more than 1/2 of the area proposed to be annexed, exclusive of streets."

Section 6 provides for certain requirements for a petition of annexation as follows:

"That on such petition each signature shall be followed by a description of the land and the area represented thereby and a sworn statement shall also accompany such petition giving the total area of the land, exclusive of streets, lying within the area proposed to be annexed: Provided further, That before any signatures are obtained on a petition as hereinbefore provided, such petition shall have attached to it a map or drawing showing clearly the territory proposed to be incorporated, detached, or added, and each prospective signer shall be shown such map or drawing before signing the petition. Such petition shall be verified by the oath of 1 or more petitioners."

The legislature placed the responsibility of determining the adequacy of the petition upon the board of supervisors when they provided in section 8 that if it,

"appear to said board or a majority thereof that said petition or the signing thereof does not conform to this act, or contains incorrect statements, no further proceedings pursuant to said petition shall be had, but, if it shall appear that said petition conforms in all respects to the provisions of this act, and that

the statements contained therein are true, said board of supervisors shall, by resolution, provide that the question of making the proposed incorporation, consolidation or change of boundaries shall be submitted to the qualified electors of the district."

The legislature concluded this section with the following expressive and pointed directive:

"After the adoption of such resolution neither the sufficiency nor legality of the petition on which it is based may be questioned in any proceeding."

Appellants claim the petition was not properly verified. The stipulation of facts contains the following statement in regard to an objection to the verification made by plaintiffs to the board of supervisors at its meeting on September 18, 1952, prior to the board's resolution authorizing the election:

"Objections were made to the board by attorneys for plaintiffs herein, concerning the validity of the petition for annexation as outlined in the bill of complaint in this cause. After much discussion, and without any order or resolution from the board authorizing it, the words 'and that the same is true' were inserted in the verification by attorney Gould Fox, in the presence of Cameron L. Davis and under his authorization and in the board room."

Appellants insist that the petition was deficient because there was not a proper description of the area represented following each signature. The petition was of such length that it required 15 pages of the record to reprint, due mainly to the fact that each signer's property was described by metes and bounds. The petition contained a sworn statement of a registered surveyor that there were 278.86 acres, exclusive of streets, in the area to be annexed.

Appellants contend that the petition failed to show that each signer inspected a map attached to the

petition before signing same. Preceding the signatures was the following statement:

"That a map or drawing showing clearly the territory to be annexed to the city of Kalamazoo was attached to this petition at the time the undersigned and each of the undersigned did sign and that the undersigned and each of the undersigned were shown and did inspect such a map or drawing before signing this petition."

Appellants also attack the petition because the signers in behalf of the petitioning corporations did not show they had authority to sign for such corporations. The statute does not contain any such requirement of proof of officer's authority, and it is a well-recognized general principle that in the absence of evidence to the contrary the presumption prevails that the officer signing had authority to do so.

Appellants contend that these defects invalidated the petition, the resolution, and the election. Over 1 year has elapsed since the election and the annexation was completed. In the case of *Holt* v. *Ogemaw Supervisors,* 186 Mich 241, it was said (p 241):

"It is one thing to determine in advance of an election that an illegal provision for the method of holding it shall not be enforced   *   *   *   and quite another thing to determine that the actual result of an election which has been held shall not be conclusive."

In the case of *Jackson City Commission* v. *Hirschman,* 253 Mich 596, we said (p 600):

"Further objections affecting the validity of the charter amendments are that they were not lawfully submitted to the electors.   *   *   *   There were irregularities, but the important fact is that there is no claim or showing that any elector was misled or hindered in his voting by reason of such irregularities."

In the case of *Hulan* v. *Township of Greenfield*, 229 Mich 273, this Court considered objections to an annexation election held under PA 1909, No 279, and at page 279 stated:

" 'As the execution of these statutes must very often fall to the hands of men unacquainted with the law and unschooled in business, it is inevitable that mistakes shall sometimes occur, and that very often the law will fail of strict compliance. Where an election is thus rendered irregular, whether the irregularity shall avoid it or not must depend generally upon the effect the failure to comply strictly with the law may have had in obstructing the complete expression of the popular will, or the production of satisfactory evidence thereof. Election statutes are to be tested like other statutes, but with a leaning to liberality in view of the great public purposes which they accomplish. * * * And where a party contests an election on the ground of these or any similar irregularities, he ought to aver and be able to show that the result was affected by them.' "

We shall apply in this case the rule approved in the above-cited cases, and in the rather recent case of *Attorney General, ex rel. Trahair*, v. *Landel Metropolitan District*, 318 Mich 376, involving an election to form a metropolitan district. In that case we said (p 381):

"After a question has been submitted to and approved by the electors, substantial compliance with the preliminary steps has often been held to be sufficient."

There was substantial compliance with the statutory requirements as to the questions involved in the 4 objections to the petition thus far discussed.

Appellants now attack the election because the petition did not contain signatures of qualified electors who were freeholders of the city of Kalamazoo. Section 6 of the statute herein under consideration

provides that the petition be signed by "qualified electors who are freeholders residing within the cities, villages or townships to be affected thereby, to a number not less than 1 per centum of the population of the territory affected thereby."

Appellants and appellees are not in agreement as to how this part of section 6 should be construed, and this Court has not previously been called upon to make a decision. We are of the opinion that this section should be construed as calling for signatures from both the township and the city. There were no signatures of residents of the city who were electors and freeholders.

The board of supervisors gave full opportunity to appellants and their counsel to present any objection they had to the petition before adopting the resolution. The record shows that appellants made known to the board all of the objections we have previously discussed. No mention was made of the absence of signers residing in the city of Kalamazoo. To invalidate the election now for failure to have on the petition signatures of electors who were residents and freeholders of the city of Kalamazoo would amount to a determination that the board was guilty of negligence or dereliction of duty in failing to ascertain a defect that neither the appellants nor their counsel could or did detect. Appellants not only failed to make this objection to the board, but failed to call same to the attention of the trial court either in the pleadings or at the hearings. Also, appellants failed to state this objection as grounds for appeal in their assignment of errors.

This Court has passed on the question of right to review claimed error when objection was not properly made in the court below. In the case of *People* v. *Holmes*, 292 Mich 212, we said (p 215):

"It is axiomatic that an objection not properly and timely presented to the court below will be ignored

on review and, except under unusual circumstances, we have no disposition to relax this rule. Nevertheless, in the exercise of supervisory control over all litigation, appellate courts have long asserted the right to consider manifest and serious errors although objection was not made by the party who appeals. As stated in *Gonzales* v. *Rivera,* 37 NM 562, 568, 569 (25 P2d 802):

" 'Ordinarily this court is content to examine the points here relied upon for reversal, if properly preserved at the trial, sustaining or overruling them. That is all appellants are entitled to as of right. But that does not limit the inherent power of this court to prevent fundamental injustice.' "

In the case of *Kruger* v. *Agnor,* 321 Mich 131, it was stated (p 138):

"This contention was not raised by the pleadings, on trial, nor in plaintiff's statement of reasons and grounds for appeal and is, in consequence, not entitled to consideration on appeal."

Because the objection that there was an absence of signers from the city of Kalamazoo was not raised at the hearing before the board, at the trial, or in the reasons and grounds for appeal, we will not consider it on this appeal.

Appellants contend that the meeting of the board of supervisors, held September 16, 1952 (when the resolution was first considered) was neither a regular nor a special meeting as required by statute, and that the meeting of September 18th was not a legally-adjourned meeting.

This question has not been previously decided by this Court and a decision requires consideration of CL 1948, §§ 46.1, 46.10, 46.11 and 117.8.

CL 1948, § 46.1 (Stat Ann 1953 Cum Supp § 5.321) provides in part:

"The supervisors of the several townships and cities in each of the counties in this State shall meet

annually in their respective counties for the transaction of business as a board of supervisors; they may also hold special meetings when necessary at such times and places as they may find convenient, and shall have power to adjourn from time to time as they may deem necessary."

CL 1948, § 46.10 (Stat Ann § 5.330), with regard to the holding of special meetings, provides:

"A special meeting of the board of supervisors of any county shall be held only when requested by at least 1/3 of the supervisors of such county, which request shall be in writing, addressed to the county clerk, and specifying the time and place of such meeting; and upon the reception of such request, the clerk shall immediately give notice in writing to each of the supervisors by causing the same to be delivered to such supervisors personally, or by leaving the same at the place of residence of such supervisor, or by mailing a copy of said notice to his post office address by registered mail with return receipt requested, at least 10 days before the time of such meeting."

CL 1948, § 46.11 (Stat Ann § 5.331) reads in part:

"The said several boards of supervisors shall have power and they are hereby authorized at any meeting thereof lawfully held: * * *

"To establish such rules and regulations in reference to the management of the interest and business concerns of such county, and in reference to the mode of proceeding before such board, as they shall deem necessary and proper in all matters not especially provided for in this act or in some law of this State."

Section 8 of PA 1909, No 279, as amended (CL 1948, § 117.8 [Stat Ann 1949 Rev § 5.2087]), provides that annexation petitions shall be filed with the clerk of the board not less than 30 days before the convening of said board in regular session, or in any spe-

cial session called for the purpose of considering such petitions.

The board of supervisors was governed by its "Rules of Order," rule 1 of which provides:

"The board of supervisors of Kalamazoo county shall meet on the second Monday in January 1 week; Tuesday following the second Monday in April, 1 day; the fourth Monday in June, 1 week; the second Monday in October, 2 weeks; also the third Tuesdays of February, March, May, July, August, September and December; and the second Tuesday in November, except as otherwise provided by law, or at such time as may have been determined on adjournment or upon the call of the chairman. The chairman shall call a meeting of the board within 48 hours after presentation of a petition signed by at least 9 members. The time of meeting shall be at 10 a.m., or 1:30 p.m. city of Kalamazoo time."

CL 1948, § 46.1 (Stat Ann 1953 Cum Supp § 5.321), also provides for an annual meeting to be held on the second Monday in October, with the privilege extended to counties with a population of over 70,-000 to change this date to the third Monday in September; and, also, for a regular meeting to be held on the Tuesday following the second Monday of April. In regard to this April meeting we call attention to PA 1911, No 44, § 5, as amended by PA 1949, No 287 (CLS 1952, § 209.5, Stat Ann 1950 Rev § 7.605) which provides that the supervisors of the several counties shall convene "on the Tuesday following the second Monday in April in each year * * * to equalize the assessment rolls in the manner provided by law."

The following 2 questions are presented:

Is a meeting convened at a time and place provided for by the "Rules of Order" of the board of supervisors a valid and legal meeting? and

Was the annexation resolution adopted at a regular meeting, as provided by PA 1909, No 279, § 8, as amended?*

Appellants state their position in regard to the meeting of September 16th, as follows:

"From the foregoing statutory provisions, it is apparent that there are only 2 ways in which a board of supervisors may legally meet, especially with regard to annexation proceedings; and that is either on a regular meeting date or at a special meeting duly called by notice in writing at least 10 days before the time of such meeting. * * *

"The proper notice for special meetings * * * was not given. Clearly it was not designated as a regular meeting date by statute, and the rules of the board of supervisors cannot * * * (CL 1948, § 46.11) contravene what has been otherwise 'expressly provided for in (that) act or in some law of this State.' "

We agree with appellants' contention that the meeting of September 16th was not called by giving notice required for a special meeting, and, therefore, cannot be considered as such. We disagree with the appellants' conclusion that the board of supervisors contravened the provisions of CL 1948, § 46.10, by adopting rule 1 of its "Rules of Order" and designating September 16th as a meeting day.

The legislature did not define the word "regular" as used in connection with "regular meeting" nor the word "special" as used in connection with "special meeting." CL 1948, § 8.3 (Stat Ann 1952 Rev § 2.212), refers to rules of construction of statutes and provides: "All words and phrases shall be construed and understood according to the common and approved usage of the language." Webster (2d ed), defines "regular" as: "Constituted, selected, conduct-

---

* CL 1948, § 117.8 (Stat Ann 1949 Rev § 5.2087).—Reporter.

ed, made, et cetera, in conformity with established or prescribed usages, rules, or discipline; duly authorized or constituted; properly qualified or educated; as, a *regular* meeting." "Special" is defined as: "Distinguished by some unusual quality; uncommon; noteworthy; extraordinary; as, a *special* occasion."

Michigan is one of the most diversified States because of its preeminent position in industrial, tourist and agricultural fields of activity. Because of this, and the variance in size and population of counties, the problems of county government vary greatly. In our opinion the legislature did not endeavor to determine the number of meetings which would fit the needs of both large and small counties. The enumeration of meetings was used in a minimum rather than a maximum sense.

The Kalamazoo board of supervisors decided it should have meetings each month. Appellants do not contend that the board should not have meetings each month, but insist that meetings not designated by statute should be convened as special meetings. The adoption of this theory would require a written request by 3 members for a meeting which they, and all the other members, knew was going to be called under their "Rules of Order." Such a construction of the statute would be an abandonment of the rule we established in *Bay Trust Co.* v. *Agricultural Life Ins. Co.,* 279 Mich 248, wherein we said:

" 'It is elementary that the rules of common sense shall apply to the construction of statutes.' "

It is significant that the statute contains no provision requiring a published notice so that the public might be informed of the proposed meeting, but is confined to a 10-day notice to the members of the board. Appellants' contention that the special meeting procedure should be followed so that members would have 10 days to arrange their business af-

.fairs is answered by the fact that the procedure in Kalamazoo county determining the day of meeting for each month of the year gave to the board members more than the 10-day notice. It is also significant that all members of the board attended the meeting of September 16th. The meeting, convened at a time and place provided for by the "Rules of Order" of the board, is a valid and legal meeting.

The second question involves the right of the board to adjourn the September 16th meeting with an adopted motion that the board reconvene at the call of the chairman. At the September 16th meeting the board discussed the annexation petition and referred same to the prosecuting attorney with instructions to prepare a resolution calling for the submission of the question at the November 4th general election. A motion was made and carried that "the board adjourn subject to call of the chairman." Rule 1, after establishing definite days for monthly meetings, provides "or at such time as may have been determined on adjournment or upon the call of the chairman." The stipulation of facts states: "The method of adjournment at this meeting of September 16, 1952, was customary procedure at meetings of the board of supervisors."

Later on the same day of September 16th, post card notices were sent to the supervisors, thereby convening the board meeting of September 18, 1952. That the September 18th meeting was not a secret meeting is disclosed by the fact that not only the supervisors attended, but also the appellants and their counsel.

Appellants challenge the meeting of September 18th because it was not a meeting adjourned to a definite day. Appellants admit that they have been unable to find Michigan authority to sustain their position, and to our knowledge this question has not previously been submitted to this Court.

CL 1948, § 46.1 (Stat Ann 1953 Cum Supp § 5.321), provides that the board "shall have power to adjourn from time to time as they may deem necessary." There is no requirement that the adjournment be to a fixed date. The board can place the responsibility on the chairman to issue the call for an adjourned meeting, and in the absence of proof that the chairman abused his power, the meeting so called shall be considered as a legally adjourned meeting.

It is our opinion that both the meetings of September 16th and 18th were valid and legal meetings and that the board had the right to pass the annexation resolution at the September 18th meeting.

PA 1909, No 279, § 9, as amended by PA 1951, No 58,[*] provides that when the petition "is filed with the city council of said city and with the township board of the township in which such territory is situated, such annexation may be accomplished by the affirmative majority vote of the city council of such city and the approval of the township board of such township."

On or about May 8, 1952, petitioners filed the annexation petition with the township board and the city clerk. The township board met in June and July and took no action other than to refer the petition to its engineer with instructions to report back by October. The stipulation of facts discloses that petitioners, because of the delay of the township board in taking action, filed the petition on August 14th with the county clerk. We believe that petitioners were justified in taking such action, and cannot sustain appellants' contention that when petitioners filed with the township board they conferred exclusive jurisdiction on said board. The statute, above referred to, clearly establishes that the filing with the township and city was an "alternate method."

---

[*] CLS 1952, § 117.9, Stat Ann 1953 Cum Supp § 5.2088.—REPORTER.

Appellants ask this Court to declare PA 1909, No 279, § 9, as amended,* unconstitutional. They contend that the electors of the city of Kalamazoo outnumber the electors in the township by a ratio of 2 to 1, and therefore this annexation election involving a "highly valued industrial area" constitutes an election in form rather than in fact. We see no merit to appellants' contention.

A question arose in the lower court as to whether the proceeding should be in chancery or as a quo warranto proceeding in law. The court decided that the question should be disposed of on its merits and transferred the proceedings to the law side. Appellants state their contention as follows:

"It is the appellants' contention that injunction in chancery is the proper remedy to pursue in this cause but that if the Court decides that the appellants' cause of action should be at law rather than in equity, the Court should not dismiss the suit but should transfer the same to the law side of the court and there decide the issues involved as a court of law as was done in the lower court."

This opinion discloses that their request that a decision be made on the merits has been granted.

Both parties have briefed the question of the applicability of the words: "After the adoption of such resolution, neither the sufficiency nor legality of the petition on which it is based may be questioned in any proceeding." (CL 1948, § 117.8 [Stat Ann 1949 Rev § 5.2087].) We have not applied this provision in this case and no inference should be drawn from that fact in regard to its constitutionality or propriety. The resolution was legally adopted and submitted to the electorate, and we sustain the approval of the annexation.

---

* CLS 1952, § 117.9, Stat Ann 1953 Cum Supp § 5.2088.—Reporter.

Judgment affirmed. No costs, a public question being involved.

BUTZEL, C. J., and BUSHNELL, BOYLES, and REID, JJ., concurred with KELLY, J.

SHARPE, J. (*dissenting*). I am not in accord with the following in the opinion of Mr. Justice KELLY:

"Because the objection that there was an absence of signers from the city of Kalamazoo was not raised at the hearing before the board, at the trial, or in the reasons and grounds for appeal, we will not consider it on this appeal."

It clearly appears that the petition did not contain signatures of qualified electors who were freeholders of the city of Kalamazoo. PA 1909, No 279, § 6 (CL 1948, § 117.6 [Stat Ann 1949 Rev § 5.2085]), provides:

"Cities may be incorporated or territory detached therefrom or added thereto, or consolidation made of 2 or more cities or villages into 1 city, or of a city and 1 or more villages into 1 city, or of 1 or more cities or villages together with additional territory not included within any incorporated city or village into 1 city, by proceedings originating by petition therefor signed by qualified electors who are freeholders residing within the cities, villages or townships to be affected thereby, to a number not less than 1 per centum of the population of the territory affected thereby according to the last preceding United States census, or according to a census to be taken as hereinafter provided, which number shall be in no case less than 100, and not less than 10 of the signatures to such petition shall be obtained from each city, village or township to be affected by the proposed change."

CL 1948, § 117.8 (Stat Ann 1949 Rev § 5.2087) provides, in substance, that if the petition does not

conform to the act no further proceedings shall be had. In my opinion the board of supervisors had no power to approve of the petition because the petition failed to have signatures of freeholders of the city of Kalamazoo on said petition. The petition on its face showed that the board of supervisors did not have jurisdiction to entertain such petition or pass an annexation resolution based upon the petition so filed. It is urged that the question of the absence of signatures by residents of Kalamazoo was not raised in the trial court and may not be raised for the first time in the Supreme Court.

The record shows that the bill of complaint contains the following:

"That the aforesaid petition, which formed the basis of the said resolution of the board of supervisors, was and is, as the plaintiffs are informed and believe and charge the truth to be, invalid and of no force or effect for the following reasons:

"(a) Said petition did not show on its face a compliance with the laws and statutes provided for such petitions."

The assignment of errors shows the following:

"The court erred in holding that the board of supervisors had a legally sufficient and proper petition for annexation before it when said board passed the resolution calling the annexation election."

Section 3 of Michigan Court Rule No 65 (1945) reads in part as follows:

"But no statement shall be deemed insufficient if it reasonably informs of the error relied upon."

In *Genrow v. Modern Woodmen of America*, 151 Mich 250, we held that assignments of error are sufficient when they fairly indicate the ground of error, though it is not precisely stated. Moreover, the Supreme Court has the right to consider manifest

and serious errors although objection was not made thereto by the appealing party. See *Morris* v. *Radley,* 306 Mich 689.

The record clearly shows that the petition was defective in that it did not have signatures of freeholders from the city of Kalamazoo, and this defect was of such a nature that the board of supervisors was without jurisdiction to entertain the petition or act on the same. Moreover, this issue, while not specifically called to the attention of the trial court, was an issue in the case and should have been passed upon. It is an accepted rule that the question of jurisdiction may be properly presented to and passed upon by a court at any stage of pending proceedings, see *In re Cody's Estate,* 293 Mich 697, and *Warner* v. *Noble,* 286 Mich 654. In *Township of Warren* v. *Raymond,* 291 Mich 426, we said (p 429):

"The question of lack of jurisdiction is open on appeal notwithstanding it was not raised in the trial court."

It follows that all proceedings in relation to the annexation were void. The judgment should be reversed, but without costs as a public question is involved.

CARR and DETHMERS, JJ., concurred with SHARPE, J.